IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| ANTHONY DONALDSON and WANDA DONALDSON, individually and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GMAC MORTGAGE LLC and GMAC, INC., <br><br> Defendants. | * <br> * <br> * <br> * <br> *     CASE NO. 4:09-CV-117 (CDL) <br> * <br> * <br> * |

O R D E R

Plaintiffs filed their Complaint against Defendants GMAC Mortgage, LLC and GMAC, Inc. (collectively, "GMAC") in the Superior Court of Muscogee County, seeking to represent a class of GMAC's Georgia customers who paid "property inspection fees, late fees, and/or any other improper and/or excessive fees" to GMAC. (Compl. ¶ 14.)  GMAC removed the action to this Court, contending that diversity jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  In the alternative, GMAC argues that the action is removable under 28 U.S.C. § 1441(a), contending that Plaintiffs' claims involve a substantial question of federal law. Plaintiffs timely filed a Motion to Remand.  For the reasons set forth below, the Motion to Remand (Doc. 7) is granted.

FACTUAL BACKGROUND

Plaintiffs allege that their home loans were serviced by GMAC and that GMAC charged them improper and excessive fees, in violation of Georgia law. (*E.g.,* Compl. ¶¶ 3-4, 21, 27-28, 49.) Among other things, Plaintiffs contend that GMAC violated the Georgia Fair Lending Act with regard to late fees, O.C.G.A. § 7-6A-3(3). (*Id.* ¶¶ 61-65.) They allege that all late fees charged by GMAC were improper and excessive. (*E.g., id.* ¶¶ 27, 65.) Plaintiffs seek statutory damages under O.C.G.A. § 7-6A-7, which provides for damages equal to two times the interest paid under the loan under certain circumstances. (*Id.* ¶ 65.) Plaintiffs define the class as "all Georgia persons and/or Georgia entities who paid property inspection fees, late fees, and/or any other improper and/or excessive fees paid by Plaintiffs to Defendants." (*Id.* ¶ 14.)

Plaintiffs also allege that GMAC violated the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. §§ 16-14-1 to -15 ("Georgia RICO"). (*Id.* ¶¶ 34-44.) Plaintiffs allege the following predicate offenses for their Georgia RICO claims: theft by taking in violation of O.C.G.A. § 16-8-2, theft by deception in violation of O.C.G.A. § 16-8-3, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, deceptive commercial email in violation of O.C.G.A. § 16-9-101, and residential mortgage fraud in violation of O.C.G.A. § 16-8-102. (*Id.* ¶ 39.)

Plaintiff Anthony Donaldson is a resident of Georgia, and Plaintiff Wanda Donaldson is a resident of Alabama. (*Id.* ¶ 10.)

Defendant GMAC Mortgage LLC is a Delaware corporation with its principal place of business in Minnesota. (Notice of Removal ¶ 10.) Defendant GMAC, Inc. is a Delaware corporation with its principal place of business in Michigan. (*Id.*) Plaintiffs allege that there are more than 200 putative class members. (Compl. ¶ 18.)

The Complaint does not contain any allegations regarding the amount in controversy. In support of its Notice of Removal, GMAC submitted evidence that there are more than 1,000 Georgia GMAC customers who paid at least one late fee or property inspection fee. (Ex. A to Notice of Removal, Fleitas Aff. ¶ 3, Oct. 8, 2009.) GMAC also submitted evidence that during the year preceding September 30, 2009, GMAC collected interest totaling more than $5,000,000 from Georgia customers who had paid at least one late fee. (*Id.* ¶ 4.)

## DISCUSSION

GMAC contends that Plaintiffs' Complaint and the documents accompanying the Notice of Removal establish that diversity jurisdiction under CAFA exists. GMAC also argues that the Court has jurisdiction under 28 U.S.C. § 1441 ("§ 1441") because Plaintiffs' claims involve a substantial question of federal law. Each of these arguments is addressed in turn below.

**I.   Diversity Jurisdiction Under CAFA**

    A.   Remand Standard

Under CAFA, federal courts have original jurisdiction over class actions in which the aggregate of the claims of individual class members exceeds $5,000,000 and "there is minimal diversity (at least

3

one plaintiff and one defendant are from different states)." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006) (internal quotation marks omitted); *accord Lowery v. Ala. Power* Co., 483 F.3d 1184, 1194 (11th Cir. 2007); see *also* 28 U.S.C. § 1332(d)(2), (6). In addition, the number of plaintiffs in all proposed plaintiff classes must exceed one hundred. *Lowery*, 483 F.3d at 1194; *accord* 28 U.S.C. § 1332(d)(5)(B). A class action may be removed to a federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1453(a), (b). Where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount. *Lowery*, 483 F.3d at 1208; *see also Miedema*, 450 F.3d at 1330. "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand." *Lowery*, 483 F.3d at 1211. The removal statutes are construed narrowly, and "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *accord Miedema*, 450 F.3d at 1329.

In assessing whether removal is proper under 28 U.S.C. § 1446(b), a court must "consider[] the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determine[] whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery*,

4

483 F.3d at 1213. Thus, when considering the propriety of removal, "the district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents." *Id.* at 1214 (footnote omitted). "If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* at 1214-15. "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Id.* at 1215.

"A defendant will generally establish proof of the amount in controversy based on documents received from the plaintiff because a 'removing defendant generally will have no direct knowledge of the value of the plaintiff's claims.'" *Thomas v. Bank of Am. Corp.*, 570 F.3d 1280, 1283 (11th Cir. 2009) (per curiam) (quoting *Lowery*, 483 F.3d at 1213 n.63). In some cases, an affidavit by an employee of the defendant calculating the amount in controversy based on sales made or fees charged falls "outside the constraints of § 1446(b)" and should not be considered in deciding whether the defendant has met its burden of establishing jurisdiction. *Lowery*, 483 F.3d at 1214 n.65 (suggesting that the *Miedema* court's consideration of an affidavit regarding the number of sales and estimated damages per sale was improper but harmless because even considering the affidavit the defendants failed to meet their burden). However, if the

5

"underlying substantive law provides a rule that allows the court to determine the amount of damages," then a defendant may introduce evidence regarding damages to establish the amount in controversy. *Id.* at 1214 n.66.

### B.   Amount in Controversy

In this action, there is no dispute that CAFA's diversity of citizenship requirement is met.  There is also no dispute that there are more than 100 putative class members.  (*See* Compl. ¶ 18 (alleging that there are more than 200 class members).)  The only remaining question is whether the amount of damages is readily discernable or whether it would be pure speculation to find that the amount in controversy exceeds $5,000,000.

GMAC contends that the amount in controversy is easily discernable and that it exceeds $5,000,000.  This argument is based on Plaintiffs' allegations under the Georgia Fair Lending Act, O.C.G.A. §§ 7-6A-1 to -13.  (Notice of Removal ¶ 14.)  Plaintiffs seek to recover under the Georgia Fair Lending Act, specifically O.C.G.A. § 7-6A-3(3), alleging that all late fees charged by GMAC are improper and excessive.  (*E.g.,* Compl. ¶¶ 27, 62, 65.)  As redress for these allegedly improper and excessive fees, Plaintiffs request "statutory damages equal to the recovery of two times the interest paid under each loan, punitive damages, costs and reasonable attorneys' fees."  (*Id.* ¶ 65.)  GMAC contends that this prayer for relief, along with its affidavit establishing the amount of fees paid by Georgia GMAC customers, is sufficient to establish the amount in

6

controversy because the statutory damages exceed $5,000,000. However, both Plaintiffs and GMAC seem to overlook the fact that statutory damages are not available for a violation of O.C.G.A. § 7-6A-3(3). Under O.C.G.A. § 7-6A-7(a)(2), statutory damages are only available for a violation of O.C.G.A. § 7-6A-3(1) (prohibiting home loans that finance credit insurance), O.C.G.A. § 7-6A-3(2) (prohibiting creditors from encouraging default on existing loan in connection with new loan that refinances existing loan), O.C.G.A. § 7-6A-4 (prohibiting home loan "flipping"), and O.C.G.A. § 7-6A-5 (placing limitations on high-cost home loans). Plaintiffs' Complaint alleges only a violation of O.C.G.A. § 7-6A-3(3) and does not contain factual allegations to support a cause of action under any of the other provisions. Because the present Complaint does not contain allegations supporting a basis for imposing statutory damages, the Court finds it inappropriate to rely upon Plaintiffs' prayer for statutory damages in determining whether jurisdiction exists under CAFA.

   Other types of damages recoverable under the Georgia Fair Lending Act include actual damages and punitive damages. Nothing on the face of the Complaint or in the documents accompanying the Notice of Removal establishes the amount of actual damages in controversy, and the Court may not speculate regarding the amount in controversy. Accordingly, the Court finds that GMAC has not met its burden of establishing the jurisdictional amount.

7

## II.  **Federal Question Jurisdiction**

GMAC argues, in the alternative, that the Court may maintain jurisdiction because Plaintiffs' Complaint raises a substantial federal question since Plaintiffs alleged federal mail and wire fraud violations as predicate acts to their Georgia RICO claims. GMAC was entitled to remove the action if Plaintiffs could have brought it in federal district court originally. 28 U.S.C. § 1441(a). Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Where, as here, a plaintiff has only pled state law causes of action, the plaintiff's state law claims may nonetheless be considered to "arise under" the laws of the United States if the state law claims raise substantial federal questions. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). The rationale behind this rule is that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. However, the rule is a narrow one and only applies to a "special and small category" of cases; "it takes more than a federal element 'to open the 'arising under' door.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006) (quoting *Grable*, 545 U.S. at 313). "'[T]he mere presence of a federal issue

8

in a state cause of action does not automatically confer federal-question jurisdiction.'" *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (alteration in original) (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)); *accord Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298-99 (11th Cir. 2008).

For a state law claim to raise substantial questions of federal law, "the state-law claim must 'really and substantially involve[] a dispute or controversy respecting the validity, construction or effect of [federal] law.'" *Dunlap*, 381 F.3d at 1290 (alterations in original) (quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)); *accord Grable*, 545 U.S. at 314. Thus, to determine whether the present action warrants federal jurisdiction, the Court "must evaluate whether the [P]laintiffs' state-law tort claims 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors*, 552 F.3d at 1296 (quoting *Grable*, 545 U.S. at 314).

In *Grable*, there was a substantial federal question because the plaintiff's state law quiet title claim turned entirely on whether he received adequate notice under the Internal Revenue Code of the Internal Revenue Service's seizure of his property. *Grable*, 545 U.S. at 315. The meaning of the Internal Revenue Code provision was the "only legal or factual issue contested in the case," and the "meaning

9

of the federal tax provision" was considered "an important issue of federal law that sensibly belongs in a federal court." *Id.* In contrast, there was no substantial federal question in *Adventure Outdoors* because although the plaintiffs' claims raised a contested federal issue, it was not substantial. In *Adventure Outdoors*, the plaintiffs brought state law claims of defamation based on the defendants' statements that the plaintiffs had violated federal gun laws. *Adventure Outdoors*, 552 F.3d at 1298. The Eleventh Circuit concluded that the plaintiffs' defamation claims necessarily raised a contested federal issue—whether the defendants' statements concerning federal law were false. *Id.* at 1298-99. Nonetheless, the court concluded that there was no substantial federal question because (1) there was no dispute over the meaning of the federal law at issue, *id.* at 1299; (2) the meaning of the federal law at issue was clear, *id.* at 1300; (3) state court application of federal criminal law in the civil context did not pose a serious threat to the federal interest of uniformity and consistency of federal criminal law, *id.;* and (4) the federal legal issue was not dispositive of the case because factual issues remained no matter how the legal issue was resolved, *id.* at 1301.

Here, GMAC argues that because Plaintiffs claimed violations of the federal mail and wire fraud statutes as predicate acts under Georgia RICO, Plaintiffs' Complaint raises a substantial federal question. In support of this argument, GMAC relies exclusively on

10

*Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000).  In *Ayres*, a group of plaintiffs brought claims under Georgia RICO, alleging mail fraud and wire fraud as the sole predicate offenses. The key issue in that case was whether a provision of the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118 ("Safety Act"), created a duty of disclosure and whether the failure to make disclosures under the Safety Act constituted federal mail and wire fraud.  Therefore, the Eleventh Circuit concluded that the case raised a substantial federal question because the plaintiffs' entire case depended on "interpretation of the federal mail and wire fraud statutes *and* their interaction with" the Safety Act.  *Ayres*, 234 F.3d at 518-19 (emphasis added).

The *Ayres* court emphasized that it was *not* holding that federal question jurisdiction exists every time a state RICO case raises federal mail and wire fraud as predicate acts.  *Id.* at 519 & n.10. Rather, the "need to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law" made the federal question in *Ayres* substantial.  *Adventure Outdoors*, 552 F.3d at 1302; *accord Ayres*, 234 F.3d at 519.  In other words, proof of the Georgia RICO claim in *Ayres* required not just proof of both federal mail and wire fraud as predicate acts but also a showing that the alleged federal mail and wire fraud violations involved a substantial federal question.  *Ayres*, 234 F.3d at 520 & n.12.  The *Ayres* court specifically distinguished the case before it from actions involving only state law RICO claims predicated upon

11

federal mail and wire fraud—with no need to construe the interplay with another federal law—because "[n]othing in those cases suggests a federal question of the magnitude involved" when there are two levels of federal law at issue. *Id.* In *Adventure Outdoors*, the Eleventh Circuit recognized the limited nature of its holding in *Ayres*, noting that *Ayres* "involved two levels of federal questions" and required the court "to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law." *Adventure Outdoors*, 552 F.3d at 1302.

The Court concludes that the present action is not a member of the "special and small category" of cases in which the substantial federal question doctrine applies. *Empire Healthchoice Assur.*, 547 U.S. at 699. The present action is akin to *Adventure Outdoors* and distinguishable from *Ayres*. Here, GMAC did not point to any dispute between the parties over the meaning of the federal mail and wire fraud statutes, and clear federal guidance exists on the questions of federal law that will be at issue in this case. Moreover, proof of the federal predicate acts does not raise a "very substantial" federal question because the mail and wire fraud allegations here do not depend on an interpretation of some other provision of federal law like the mail and wire fraud allegations in *Ayres* did.[1] Also, here, as in *Adventure Outdoors*, state court application of federal

---

[1] In addition, Plaintiffs' Georgia RICO claims do not rest solely on federal mail and wire fraud allegations. Plaintiffs also allege as predicate acts four Georgia law violations—theft by taking, theft by deception, deceptive commercial email, and residential mortgage fraud.

12

criminal law in the civil context does not pose a serious threat to the federal interest of uniformity and consistency of federal criminal law. *Adventure Outdoors*, 552 F.3d at 1300. Finally, the federal legal issue is not dispositive of the case because factual issues will exist regarding whether GMAC made misrepresentations calculated to defraud another of money or property and whether Plaintiffs were injured by reason of any misrepresentations made by GMAC. For all of these reasons, the Court concludes that "the federal issue in this case does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state-law claim in *Grable*" or *Ayres*. *Id.* at 1301.

## CONCLUSION

As discussed above, there is no diversity or federal question jurisdiction, so removal was not proper. Accordingly, Plaintiffs' Motion to Remand (Doc. 7) is granted, and the Court therefore remands this action to the Superior Court of Muscogee County.

IT IS SO ORDERED, this 26th day of January, 2010.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE